[S. F. No. 13613. In Bank.—January 23, 1931.]

EDNA LEOTA SQUIRES, as Administratrix, etc., Respondent, v. WINNIE RIFFE, Appellant.

J. Hampton Hoge, L. H. Honey and A. Dal. Thompson for Appellant.

M. H. Iverson and Benjamin C. Jones for Respondent.

THE COURT.—An order of transfer of this cause was made on account of the reference in the opinion of the District Court of Appeal to the cases of *Smellie* v. *Southern Pac. Co.,* (Cal.) 287 Pac. 343, and *Krause* v. *Rarity,* (Cal. App.) 285 Pac. 879. At the time of the order of transfer these two cases were before us, in the former of which a rehearing had been granted, and in the latter a transfer had been ordered. These cases were cited in support of the conclusion that section 141¾ of the California Vehicle Act was not applicable to the instant case. Since the transfer of this case to this court we have decided the case of *Krause* v. *Rarity,* which is reported in 210 Cal. 644 [193 Pac. 62], and have held therein that said section 141¾ does not affect pending actions. We deem it unnecessary, therefore, to further discuss that question. We have, therefore, eliminated from the opinion of the District Court of Appeal all reference to said question. We adopt the remaining portion of said opinion as the opinion of this court. It was written by Presiding Justice Finch, concurred in by Justices Plummer and Thompson, and with the exception above noted is as follows:

"The plaintiff recovered judgment for damages in the sum of $5,000 for the death of her husband, George E. Squires, alleged to have been caused by the negligent operation of an automobile owned by the defendant Winnie Riffe and driven by the defendant Tallman. Winnie Riffe has appealed from the judgment.

"At the time of and prior to the accident the appellant owned and conducted a hotel at Upper Lake, Lake county. Tallman is the appellant's brother. He had been doing 'odd jobs and errands' for her for many years, sometimes using her automobile in going on such errands. She also permitted Tallman and his wife to use her automobile 'on their private errands'. Tallman's wife was a waitress in the hotel. Yee Ock was employed by the appellant as a cook in the hotel.

"Tallman, his wife, Squires and Yee Ock left Upper Lake in appellant's automobile shortly before 10 o'clock in the evening on September 15, 1928. It does not appear at whose invitation Squires rode in the machine. They drove to

several places during the night and as they were returning
to Upper Lake between the hours of 4:30 and 5 the next
morning, at a place where the road turns sharply to the
right over a bridge, Tallman lost control of the automobile
and it went over the left side of the bridge. Squires was
crushed beneath the automobile and killed. Part of the road
near the bridge was covered with loose gravel and in passing
through it the rear end of the automobile skidded so far to
the left that, while the front wheels went upon the bridge,
the left rear wheel missed it, thereby causing the machine
to topple over into the bed of the creek below. The automo-
bile was a Jewett sedan, equipped with balloon tires. The
evidence shows that the right rear tire was flat, it having
been punctured by a large nail, apparently as the machine
was approaching the bridge, the nail being of the kind used
in the structure of the bridge. One of the witnesses testified
that the flat tire 'would have a tendency to throw you back
and to the left'. Tallman testified that he slowed down to
'10 or 15 miles an hour' as he approached the bridge. There
is sufficient evidence to support a finding either that the
accident was caused by the flat tire or that it was due to the
negligence of Tallman in rounding the curve at too high a
speed.

"Mrs. Tallman testified: 'Q. Did this Yee Ock ask to
accompany you on this trip? A. No sir. Q. How did he
happen to go? A. Mrs. Riffe said if we were going to take
him with us. . . . Q. What words did she use in that con-
nection, if you remember? A. Not exactly. She asked if we
were going. I said the lights were not good in our car.
She said if we were going any place in the evening to take her
car and take the little China boy (Yee Ock) along with us.'
Relative to the same matter, the appellant testified: 'Q. On
the occasion of permitting your car to be used on the evening
before the accident happened, did you give any order to
any person as to who should be taken in the car there
or who should not? A. I told them to take Albert (Yee
Ock), we called him Albert, if he cared to go. . . . Q. Did
you order anybody to take him? A. No. Q. Did you make
the use of your car dependent on them taking Albert?
A. Not entirely, no.'

■ "The evidence shows without conflict that the automobile in question was owned by the appellant and was, at the time of the accident, being driven by Tallman with her consent. From these facts an inference arises that he was her agent in driving the automobile. (*Ransford* v. *Ainsworth,* 196 Cal. 279, 281 [237 Pac. 747].) In addition to this inference, the foregoing evidence tends to show, as was said in the case cited, not only that Tallman was operating the automobile with the appellant's consent, 'but that in doing so he was engaged in doing things which were matters of her . . . concern'. While such proof of agency is not conclusive, it is sufficient.

■ "The following occurred during the direct examination of the plaintiff as a witness: 'Q. After the death of your husband, Mrs. Squires, did you have any conversation with Mrs. Riffe? A. I did. . . . Q. State what that conversation was, . . . relating to the bringing of this suit and making a demand upon Mrs. Riffe? Mr. Honey (counsel for defendants) : We submit that it is immaterial whether she made demand on Mrs. Riffe when she brought suit. . . . I have an idea it is an attempt to bring in extraneous matter here that has no relation to this matter. The Court: I think I will overrule the objection. . . . A. I told Mrs. Riffe I was going to bring suit, that I thought I ought to get damages. . . . She said she didn't want it to cost her a lot of money but she realized it and that is the reason she had insurance. Mr. Honey: If the court please, I assign the asking of that question as misconduct on the part of counsel, injecting extraneous matter into this case, and I now move that this jury panel be discharged and this case adjudged a mistrial. . . . The Court: The testimony about the conversation will be stricken out and the jury admonished when a matter is stricken out it is not to be considered by you in any way, it is to be considered the same as if no such testimony had been given or called for. The balance of the motion will be denied.' At the close of the plaintiff's case in chief, counsel for the defendants renewed his motion for the discharge of the jury because of the prejudicial effect of the foregoing evidence. In denying the motion the court said: 'I confess I am considerably worried about the question.'

"It must be presumed that counsel for the plaintiff knew the answer which his client would give to the objectionable question. Her answer could serve no purpose except to get before the jury the fact that the appellant carried indemnity insurance. The language of the Supreme Court in *Citti* v. *Bava*, 204 Cal. 136, 138 [266 Pac. 954], is applicable to the matter under discussion. Referring to proof of a settlement disclosing 'the fact that the defendant was indemnified by a policy of insurance', it is there said:

" 'The evidence of the settlement, alone, not connected up with any act or admission of the defendant and concerning which he had nothing to do was clearly inadmissible in evidence. The error in admitting it might not in and of itself require a reversal, but coupled with the avowed purpose and successful attempt of plaintiff's counsel to get before the jury not only the fact of the settlement but also that the settlement was made by the insurance carrier of the defendant, puts the case in a position where section 4½ of article VI of the Constitution will not save the judgment. The natural tendency of a line of examination that suggests to the jury that the defendant is indemnified against any judgment for damages against him is highly prejudicial to his rights, especially in a closely balanced case where the evidence otherwise would be easily sufficient on appeal to support a verdict either for the plaintiff or for the defendant. Such attempts on the part of counsel have frequently been held to be improper and prejudicial. . . . From an examination of the record in this case it is impossible for us to state that the jury would not have found a different verdict, had the objectionable examination not taken place and the evidence not been admitted.' . . .

"One of the instructions contains the word 'presumption' where the word 'inference' should have been used. (*Maupin* v. *Solomon*, 41 Cal. App. 323 [183 Pac. 198].) Another instruction states that it is negligence as a matter of law to 'approach' a turn at a speed greater than 15 miles an hour under the conditions mentioned in section 113, subdivision 3, of the California Vehicle Act. The limit fixed by that subdivision is 'fifteen miles an hour in traversing or going around curves or corners'."

The judgment against appellant Winnie Riffe is reversed.